# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### April 8, 2026 Session

## IN RE CONSERVATORSHIP OF LEON AUBREY MANNERS

**Appeal from the Chancery Court for Montgomery County**
**No. MC CH CV CP24-66     Kimberly S. Lund, Chancellor**

———————————————————

### No. M2025-00990-COA-R3-CV

———————————————————

This appeal concerns the trial court's decision to charge the costs of a conservatorship proceeding against the petitioner under Tennessee Code Annotated § 34-1-114. The petitioner sought a conservatorship for the respondent—the petitioner's 84-year-old father—to protect his father and to prevent him from wasting his assets. The court found clear and convincing evidence that the respondent was a disabled person in need of a conservatorship and that it was in the respondent's best interest that the petitioner be appointed his conservator. But the court charged the costs of the proceedings to the petitioner rather than the property of the respondent. The court reasoned, *inter alia*, that the petitioner benefited from the conservatorship and that the respondent's need for a conservatorship was "borderline" and "not clear cut." The petitioner appeals. Having reviewed the trial court's discretionary decisions pursuant to the three-part analysis set forth in *Lee Medical Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010), we have determined that the trial court's decision to charge the costs of the proceedings to the petitioner was based on an erroneous assessment of the relevant facts and a misapplication of the relevant legal principles. Accordingly, we vacate the decision and remand with instructions to assess all the guardian ad litem fees against the property of the respondent, the amount of which has already been approved, and to assess against the property of the respondent the reasonable and necessary attorney's fees and costs the petitioner incurred in the trial court and on appeal, the amount of which is to be determined on remand. The trial court shall also determine the reasonable and necessary attorney's fees and costs incurred by the attorney ad litem in this appeal and assess those charges against the property of the respondent.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated in Part; Modified in Part; and Remanded

FRANK G. CLEMENT JR., C.J., delivered the opinion of the court, in which W. NEAL MCBRAYER and WILLIAM E. PHILLIPS, II, JJ., joined.

Suzanne G. Marsh, Clarksville, Tennessee, for the appellant, Timothy Lane Manners.

Taylor V. Hutson, Clarksville, Tennessee, attorney ad litem.

# OPINION

## FACTS AND PROCEDURAL HISTORY

In March 2018, Leon Aubrey Manners ("Respondent") executed powers of attorney naming his wife, Betty Manners, as his attorney-in-fact and healthcare agent. Respondent named one of his adult sons, Timothy Manners ("Petitioner"), as the contingent agent if Mrs. Manners was unable or unwilling to serve.[1]

Nine months later, in December 2018, Respondent and Mrs. Manners purchased a home on Liam Court in Clarksville, Tennessee. Unfortunately, Mrs. Manners died in January 2020, leaving Respondent as the sole owner of the house. Two months later, in March 2020, Respondent executed a quitclaim deed conveying the Liam Court house to Petitioner. But Respondent continued living in the home by himself, and he continued to pay for the HOA fees, property insurance, property tax, and utilities.

Over the next few years, Petitioner became concerned about Respondent's ability to care for himself. After discussing the matter with family, Respondent agreed that it was a good idea to stop driving, and he gave Petitioner his keys. Still, Respondent continued to live by himself. Then in January 2023, Respondent's other adult son, Troy Lee Manners, and his wife moved into the Liam Court house to help care for Respondent.

In October 2024, Petitioner filed a petition for conservatorship pursuant to Tennessee Code Annotated § 34-3-101.[2] As amended, the Petition alleged that Respondent, who was 84 at the time, could not live alone due to his declining mental and physical health. Accordingly, Petitioner asked the court to name him as Respondent's conservator with authority over all financial decisions, all personal and medical decisions, and all decisions regarding living arrangements.

---

[1] Respondent and Mrs. Manners had three adult children, Timothy Manners, Troy Lee Manners, and Teresa Lynn Manners, all of whom reside in Clarksville, Tennessee.

[2] Tennessee Code Annotated § 34-3-101(a) says that "[a]ctions for the appointment of a conservator may be brought in a court exercising probate jurisdiction or any other court of record of any county in which there is venue."

The Petition was accompanied by an affidavit from Troy Manners and a sworn medical examination report from Respondent's physician, Stephen A. White, M.D.[3] In his affidavit, Troy testified that Respondent needed help with making daily financial and medical decisions because he "suffered from mild cognitive decline and executive [dys]function along with Parkinson's Disease."[4] Similarly, in the examination report and his subsequent deposition, Dr. White opined that Respondent could not live alone or make reasoned financial or medical decisions because Respondent was experiencing a progressive decline in his cognitive and executive functions, had Parkinson's Disease, and had a history of falling.[5] Dr. White specified that a conservator was needed "for Patient's physical well-being," "to assist in handling Patient's finances," "to assume full control over Patient's finances," and "to consent to medical treatment."

After the Petition was filed, the trial court appointed attorney August D. Kirby as the guardian ad litem pursuant to Tennessee Code Annotated § 34-1-107.[6] Ms. Kirby ("the GAL") reviewed the court file, including Dr. White's sworn report, and conducted an in-person interview of Respondent. Because Respondent opposed the Petition, the GAL filed a report recommending the appointment of an attorney ad litem to represent him.[7] The GAL

---

[3] The Respondent's daughter, Teresa, did not participate in these proceedings due to a serious head injury sustained in a car wreck.

[4] The affidavit of Troy Manners stated, in pertinent part:

3. The Respondent suffers from mild cognitive decline and executive function along with Parkinson's Disease, and accordingly needs assistance with making daily financial and medical decisions.

4. I think it is in the best interest of the Respondent to have a Conservator appointed in order to assist him in handling his financial affairs and making important financial and medical decisions for the Respondent.

5. I believe TIMOTHY LANE MANNERS, the Petitioner and the Respondent's son, is the best suited and most appropriate individual to serve as Conservator over Respondent.

[5] The Report was provided in accordance with Tennessee Code Annotated § 34-3-105, which requires an examination report to be submitted to the court when pertinent. *See id*. § 105(a).

[6] Tennessee Code Annotated § 34-1-107(a)(1) generally requires courts to appoint a guardian ad litem when a petition for appointment of a fiduciary is filed. "The guardian ad litem owes a duty to the court to impartially investigate the facts and make a report and recommendations to the court" and "serves as an agent of the court and is not an advocate for Respondent or any other party." *Id*. § 107(d)(1).

[7] Tennessee Code Annotated § 34-1-125 requires the appointment of an attorney ad litem "upon the recommendation of the guardian ad litem or if it appears to the court to be necessary to protect the rights

took no position on whether Respondent needed a conservator and, if so, whether the court should appoint Petitioner.

In January 2025, the trial court appointed Taylor V. Hutson as the attorney ad litem. After a thorough review of the case and a conference with Respondent, Ms. Hutson ("the AAL") filed an answer on Respondent's behalf that disputed the need for a conservator and asked the court to deny the Petition.

In March 2025, the trial court conducted a trial, during which it heard live testimony from Petitioner, Respondent, and Respondent's respite home medical companion, Carol Murphy.[8] The court also accepted into evidence Dr. White's medical report and a transcript of Dr. White's deposition testimony.

Of note, Ms. Murphy, the Respondent's home medical companion, testified that Respondent was "cognitively scrambled" and could not perform day-to-day tasks. She also described the conditions of Respondent's living quarters as "filthy" and noted that feces were smeared on the wall.

Petitioner testified that Respondent agreed to stop driving and agreed to live with Troy and his wife because it was unsafe for Respondent to live alone. Petitioner also testified that the family was concerned about Respondent's financial decisions. For example, Petitioner said that Respondent had recently paid $16,000 in veterinary bills to care for his dog, was trying to buy a car even though he had agreed to stop driving, and had recently withdrawn $30,000 from his bank account for no specific reason other than generalized concerns over his finances. Shortly before the Petition was filed, Respondent unilaterally moved into an assisted living facility, Uffleman Estates. But shortly thereafter, Respondent contacted a moving company to move back to the house on Liam Court.

Petitioner noted that he had served as Respondent's attorney-in-fact under a general durable power of attorney and his healthcare agent for several years but explained that a conservatorship was necessary to stop his father from making unwise decisions. As Petitioner explained, he had the authority to attend to business and financial matters on Respondent's behalf, but he lacked the authority to stop Respondent from unilaterally making bad decisions.

Respondent maintained there was no need for conservatorship. When questioned about the $18,000.00 veterinary bill, Respondent said that his dog was purchased to help him cope with the loss of his wife and that he just wanted to do whatever he could to keep

---

or interest of the respondent." *Id*. § 125(a). The attorney ad litem serves as "an advocate for the respondent in resisting the requested relief." *Id.*

[8] Respondent's son Troy did not testify.

the dog alive. Respondent agreed that he could not live on his own, but he insisted that his mental health was intact and that he needed only physical assistance. Respondent also expressed regret over conveying the title to his house to Petitioner.

In his deposition testimony, Dr. White said that he had been treating Respondent for six years and had observed a progressive decline in Respondent's cognitive and executive function. Dr. White testified that, over the past couple of years, Respondent would come to appointments with his sons rather than alone, as before. Dr. White further testified that Respondent was diagnosed with Parkinson's Disease and had a history of falling. For these and other reasons, Dr. White believed a conservator was needed for Respondent's physical well-being, to supervise Respondent's financial decisions, and to consent to medical treatment.

The court took the matter under advisement, and, on March 12, 2025, an order was entered in which the trial court granted the Petition creating the conservatorship and appointing Petitioner as the conservator of Respondent. An Amended Order was entered on March 20, 2025, in which the court stated:

> [T]he Court finds by clear and convincing evidence that pursuant to TCA 34-1-126, [Respondent] is a fully disabled person, who is in need of assistance from the Court. . . .
>
> In compliance with TCA 34-3-103, Petitioner is the natural child of [Respondent] and given the fact that [Respondent's] wife is deceased, it is in [Respondent's] best interest that Petitioner be appointed as conservator. To date, the Petitioner has been taking steps which he believed to be in the best interest of his father, certainly making some of the most difficult decisions a child of an aging parent can make. . . .
>
> The Court acknowledges that Petitioner has both a valid Durable General Power of Attorney as well as a Durable Power of Attorney for Healthcare. However, based on [Respondent's] behaviors wherein he contacted movers to leave Uffelman Estates, emptying a bank account and the consideration of purchasing a car, the Court cannot risk allowing [Respondent] the opportunity to revoke said powers of attorney, thereby placing his safety in jeopardy as well as engaging in the waste or dissipation of his property.

Thus, the trial court granted the Petition and created the conservatorship. In doing so, the court removed substantially all of Respondent's rights[9] and vested them in Petitioner as conservator of the person and property of Respondent.

Fee applications were then submitted by Petitioner, the GAL, and the AAL. Counsel for Petitioner stated that her hourly rate was $400 and requested legal fees of $9,352.50 plus $1,675 for expenses. The AAL stated that her hourly rate was $300 per hour and requested legal fees of $5,137.96. And the GAL stated that her hourly rate was $285 and requested legal fees of $4,846.38. Petitioner's attorney asked for her fees to be assessed against Respondent's assets—but both the AAL and the GAL asked for their fees to be assessed against Petitioner.

A hearing on all fee requests was conducted in April 2025, and the court's rulings were set forth in two orders, both entered June 2, 2025. In its Order for Payment of Fees, the court charged the AAL's fees against Respondent's assets as mandated by Tennessee Code Annotated § 34-1-125.[10] But the court said it was "exercise[ing] its discretion to split the [GAL's] fees" by charging them equally against Respondent and Petitioner because "both parties benefitted from the work of the Guardian Ad Litem." The court further said it was "exercise[ing] its discretion to order that Petitioner be responsible for his own costs and fees," explaining as follows:

> The Court did not find that [Petitioner] sought the conservatorship for any nefarious reasons but finds that some benefits were conferred on [Petitioner] by [Respondent] through money he expended for the continued payment of certain expenses and the conveyance of real property. Additionally, [Respondent] was not agreeable to the appointment of a conservator and but for some other testimony, some of which is included in the expenses of Petitioner, [Petitioner] may not have prevailed.

The court further clarified its reasoning in its Supplemental Fee Order, stating as follows:

> The Court first notes that pursuant to TCA 34-1-114(a) attorney fees in conservatorship cases may be charged against the property of the

---

[9] The trial court removed all rights specified in Tennessee Code Annotated § 34-3-107(a)(2), including the right to make decisions relative to medical care, the right to dispose of real and personal property, the right to use a driver license, the right to make purchases, the right to contract, and the right to invest income and assets.

[10] The order cited Tennessee Code Annotated § 31-1-125. We infer that the court meant to cite § 34-1-125, which requires courts to charge the attorney ad litem's fees "against the assets of the respondent." *Id*. § 125(b)(1).

respondent, the petitioner or any other party at the Court's discretion[ ]or partially to any one or more as determined in the court's discretion.

In this matter, Petitioner pursued a conservatorship over his father, but not because of a precipitating singular event. That is to say, there was not an event that necessarily necessitated the need for a conservatorship. In fact, the testimony at the final hearing was that [Respondent] had voluntarily moved himself in to [sic] an assisted living facility. This court recognizes Petitioner's concern for his father, however, though granted, [Respondent's] need for a conservatorship at this time was borderline.

Further, pursuant to TCA 34-1-114(c), "the petitioner is responsible for the court costs necessary for initiating proceedings, including filing fees and costs associated with required notices and publication". The fee affidavit submitted by Ms. Marsh contains fees associated with this matter, including two powers of attorney totaling $1675.00 which are billed as occurring after the Petition for Conservatorship had been filed. This Court presumes those fees to be associated with and necessary for initiating the proceedings in this matter and therefore not be taxed to Mr. Manners.

. . . .

While the Court makes no findings as to the reasonableness of what was charged to Petitioner, the Court does find that it is not reasonable to assess the fees associated with [Petitioner's counsel] to [Respondent]. [Respondent] in no way wanted or consented to this conservatorship. He was further not in a position where a conservatorship was mandated because of some sort of immediate emergency. [Respondent], though struggling, testified that he was attempting to care for himself and thought he was doing all the right things to do so. This Court must consider expenses taxed to [Respondent] with great care and scrutiny. This includes the approximately $11,000 bill being sought to be taxed to [Respondent]. Certainly depleting [Respondent's] estate of $11,000 in no way benefits him.

. . . .

During the hearing relating to attorney fees, [Petitioner's counsel] made it clear that she was not in agreement with her fees in this matter not [sic] being paid for by the Petitioner. However, after reviewing testimony and considering all the proof before the Court, it is the decision of this Court that the fees generated by [Petitioner's counsel] are to be paid by her client as he sought the conservatorship and perhaps would ultimately benefit from having his father in said conservatorship. [Petitioner's counsel] made much

to do about the Court not considering the transfer of a home prior to this proceeding, which was ultimately to the benefit of her client. While any sort of valid or invalid transfer was not before the Court, the [Respondent]'s mental capacity was. As previously noted, this was a close call and the Court decided to err on the side of caution given the testimony of the most recent caregiver for [Respondent].

The court also found that $1,675 of Petitioner's fees were "associated with and necessary for initiating the proceedings in this matter." Thus, the court held that these costs could not be charged to Respondent under Tennessee Code Annotated § 34-1-114(c), which states, *inter alia*, that "the petitioner is responsible for the court costs necessary for initiating proceedings."

In summary, the trial court charged $9,352.50 to Petitioner for his attorney's fees and expenses, plus $2,423.19 for half of the GAL's fees and expenses under subsection (a) of § 34-1-114 and $1,675 for "associated" and "necessary" expenses under subsection (c) of § 34-1-114. This appeal followed.

## ISSUES

Petitioner raises five issues on appeal, which we consolidate and restate as whether the trial court strayed beyond the applicable legal standards and failed to properly consider the factors customarily used to guide the assessment of costs in conservatorship proceedings when it ordered Petitioner to pay his own attorney's fees and costs, including $1,675 for costs that the court found necessary for initiating the proceedings, plus half of the GAL's fees. The AAL raises no additional issues other than requesting that her appellate fees be awarded.

## STANDARD OF REVIEW

The standard of review for a trial court's order awarding attorney's fees in a conservatorship is the abuse of discretion standard. *See Am. Nat. Bank v. Bradford*, 188 S.W.2d 971, 980 (Tenn. Ct. App. 1945) (explaining that the "court may, in its discretion, make a reasonable allowance and compensation to the guardian for his trouble and expense in settling the business of his ward's estate"); *accord In re Conservatorship of Hudson*, 578 S.W.3d 896, 906 (Tenn. Ct. App. 2018); *In re Conservatorship of Lindsey*, No. W2011-00196-COA-R3-CV, 2011 WL 4120664, at *4 (Tenn. Ct. App. Sept. 16, 2011); *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005). Although the abuse of discretion standard of review envisions a less rigorous review of the trial court's discretionary decisions, the standard does not immunize a trial court's decision from any meaningful appellate scrutiny. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

"A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Black v. Strada*, 721 S.W.3d 223, 226 (Tenn. 2025) (quoting *Fisher v. Hargett*, 604 S.W.3d 381, 395 (Tenn. 2020)). "An abuse of discretion also occurs when a court 'strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision.'" *Id.* (quoting *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)).

The charging of costs in a conservatorship proceeding is controlled by statute. *See* Tenn. Code Ann. § 34-1-114. "Issues of statutory interpretation are questions of law, which are also reviewed de novo without a presumption of correctness." *Coffee Cnty. Bd. of Educ. v. City of Tullahoma*, 574 S.W.3d 832, 839 (Tenn. 2019). "We give the words of a statute their 'natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" *State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022) (quoting *Ellithorpe v. Weismark*, 479 S.W.3d 818, 827 (Tenn. 2015)).

This court's review of factual findings is "de novo upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise." *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). *See* also Tenn. R. App. P. 13(d).

### ANALYSIS

Petitioner, whose petition was granted and who was appointed Conservator of Respondent, seeks to overturn only the trial court's order requiring him to pay his own attorney's fees and expenses, including the filing fees, the required medical examination costs, and court reporter fees, as well as one-half of the GAL's fees.[11]

### I. COSTS OF THE PROCEEDINGS

As an initial matter, we must address the parties' differing interpretations of the statute that governs the award of attorney fees and costs in conservatorship proceedings. Resolving this dispute first is necessary because discretionary decisions must take into account the applicable law and the "relevant facts." *Lee Med., Inc.*, 312 S.W.3d at 524.

---

[11] No one has challenged the trial court's finding that Petitioner proved "by clear and convincing evidence . . . that [Respondent] is a fully disabled person, who is in need of assistance from the Court" or the court's finding that it was "in [Respondent's] best interest that Petitioner be appointed as conservator." Further, having reviewed the record, we find that the evidence fully supports these findings and the resulting rulings. Moreover, the trial court's assessment of the AAL's fees against the property of Respondent is not at issue on appeal.

Tennessee Code Annotated § 34-1-114 provides in relevant part as follows:

(a) **The costs of the proceedings**, which are the court costs, the guardian ad litem fee and expenses incurred by the guardian ad litem in conducting the required investigations, the required medical examination costs, and the attorney's fee for the petitioner, **may, in the court's discretion**, **be charged against the property of the respondent** to the extent the respondent's property exceeds the supplemental security income eligibility limit, or **to the petitioner or any other party**, or **partially to any one or more of them as determined in the court's discretion**. **In exercising its discretion to charge some or all of the costs against the respondent's property, the fact a conservator is appointed** or would have been appointed but for an event beyond the petitioner's control **is to be given special consideration**. . . .

(b) If the **principal purpose** for bringing the petition is to benefit the petitioner **and** there would otherwise be little, if any, **need for the appointment of a fiduciary**, the costs of the proceedings **may** be assessed against the petitioner, **in the discretion of the court**.

Tenn. Code Ann. § 34-1-114[12] (emphasis added).

The gravamen of Petitioner's argument on appeal is that the trial court lacked authority to charge costs of the proceedings against him unless "the principal purpose for bringing the petition" was to benefit Petitioner and "there would otherwise be little, if any, need for the appointment of a fiduciary." *See id*. § 114(b). Respondent, on the other hand, relies on the language in subsection (a), which broadly gives trial courts discretionary authority to charge costs against the petitioner without specifying what factors must be considered. *See id*. § 114(a).

As our Supreme Court has explained, courts must construe statutory provisions in the context of the entire statutory framework governing the same subject:

Statutes that relate to the same subject matter or have a common purpose must be read *in pari materia* so as to give the intended effect to both. The

---

[12] Subsection (c) goes on to provide:

Notwithstanding subsections (a) and (b), Petitioner is responsible for the court costs necessary for initiating proceedings, including filing fees and costs associated with required notices and publication. At any point in the proceedings, in the court's discretion, such costs may be charged according to subsection (a) and Petitioner may be reimbursed.

Tenn. Code Ann. § 34-1-114(c).

construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute. We seek to adopt the most reasonable construction which avoids statutory conflict and provides for harmonious operation of the laws.

*Spires v. Simpson*, 539 S.W.3d 134, 145 (Tenn. 2017) (citation modified). Moreover, "[w]here a conflict is presented between two statutes, a more specific statutory provision takes precedence over a more general provision." *Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010). Here, however, there is no conflict. On the contrary, we read subsections (a) and (b) as being complimentary, and neither takes precedence over the other. Moreover, each subsection leaves the decision to the discretion of the trial court as evidenced by the term "may" in both subsections, subject to the parameters set forth in the statute.

Both subsection (a) and subsection (b) of § 34-1-114 vest the trial court with discretionary authority to charge costs of the proceedings to the petitioner. *Compare* Tenn. Code Ann. § 34-1-114(a) ("The costs of the proceedings . . . may, in the court's discretion, be charged . . . to the petitioner.") *with id.* § 34-1-114(b) ("[T]he costs of the proceedings may be assessed against the petitioner, in the discretion of the court."). But contrary to Petitioner's argument, subsection (b) does not state that the assessment of costs against a petitioner is warranted *only* if (1) "the principal purpose for bringing the petition is to benefit the petitioner" and (2) "there would otherwise be little, if any, need for the appointment of a fiduciary." *Id.* § 114(b). Nevertheless, the facts of this case do not support a charging of costs against the Petitioner pursuant to subsection (b).

To the contrary, as discussed in detail below, we find subsection (a) controlling. To paraphrase subsection (a), the costs of the conservatorship proceeding may, in the court's discretion, be charged against the property of the respondent or to the petitioner, or partially to any one of them, and in exercising its discretion to charge the costs against the respondent's property, **the fact a conservator is appointed is to be given special consideration**. *See* Tenn. Code Ann. § 34-1-114(a). Here, a conservator was appointed; thus, this fact should have been given special consideration. *Id.*

Having determined the appropriate legal standard, we turn to Petitioner's assertion that the trial court's decision was based on an erroneous application of the relevant law and an erroneous assessment of the evidence.

## A. Relevancy

Petitioner asserts the trial court erred by relying on events that precipitated Respondent's need and predated the filing of the Petition in charging the costs of the proceeding.

In the Order for Payment of Fees, the trial court found that "some benefits **were conferred** on [Petitioner] by [Respondent] through money he expended for the continued payment of certain expenses and the conveyance of real property." We infer that the trial court was referring to the fact that Respondent continued paying for taxes, insurance, and utilities after conveying the Liam Court house to Petitioner. The trial court also referenced the transfer of Respondent's home to Petitioner in the Supplemental Fee Order. Specifically, the court stated:

> [Petitioner's counsel] made much to do about the Court not considering the transfer of a home prior to this proceeding, which was ultimately to the benefit of her client. While any sort of valid or invalid transfer was not before the Court, the Ward's mental capacity was. As previously noted, this was a close call and the Court decided to err on the side of caution given the testimony of the most recent caregiver for Mr. Manners.

However, as the trial court acknowledged, whether the real estate transfer was valid or invalid was not before the court. Moreover, there is no evidence in this record suggesting any impropriety related to the transfer or that Respondent was unduly influenced or coerced by Petitioner to make the transfer.[13] Indeed, Respondent's son Troy, who arguably would be adversely impacted by the transfer of the property from Respondent to Petitioner, joined in the Petition, recommended the appointment of Petitioner as the conservator and expressed no objection to or concerns regarding the propriety of the transfer of Respondent's property to Petitioner.

The trial court also reasoned that charging costs to Petitioner was appropriate because Respondent's need for a conservatorship was "not because of a precipitating singular event," i.e., "there was not an event that necessarily necessitated the need for a conservatorship." And the court found that the need for a conservatorship was not due to "some sort of immediate emergency." But it is of little consequence that a respondent's disability occurred because of a singular event, for example, a stroke or head injury, or over time, as with dementia. *See id.* A respondent's needs, or lack thereof, would be the same regardless of the cause of his or her disability.

We also find it inconsequential that Respondent "had voluntarily moved himself in to [sic] an assisted living facility"; "was attempting to care for himself and thought he was doing all the right things to do so"; and "in no way wanted or consented to this conservatorship." What is relevant is whether he needed assistance, protection or supervision under a conservatorship and the trial court found, based on clear and

---

[13] Thus, the transfer following the death of respondent's wife may have been an estate planning decision favored by the family, and Troy Manners's silence on this subject speaks volumes. Moreover, Petitioner should not have been appointed to the fiduciary position of conservator if there was evidence that he had taken advantage of his father concerning the conveyance of the property.

- 12 -

convincing evidence, that he was. *See* Tenn. Code Ann. § 34-1-101(14) (The statutory definition of a person with a disability is any adult "determined by the court to be in need of partial or full supervision, protection, and assistance by reason of mental illness, physical illness or injury, developmental disability, or other mental or physical incapacity.").

## B. Primary Purpose of Petition

In the Order for Payment of Fees, the trial court reasoned that Petitioner should be responsible for half of the GAL's fees because, *inter alia*, "both parties benefitted from the work of the [GAL]." And in its Supplemental Fee Order, the court reasoned that Petitioner should be responsible for his own fees because "[Petitioner] sought the conservatorship" and "perhaps would ultimately benefit from having his father in said conservatorship." (Emphasis added).

The mere fact the Petitioner sought the conservatorship is irrelevant. As stated, charging costs to the petitioner in a conservatorship proceeding is appropriate when the "principal purpose for bringing the petition is to benefit the petitioner." Tenn. Code Ann. § 34-1-114(b). However, the trial court did not find that the principal purpose of bringing the petition was to benefit Petitioner. Rather, the court found that Petitioner benefited from the GAL's services and would "perhaps" benefit from the conservatorship. Indeed, all involved in the proceedings benefitted from the services of the GAL, but this is no basis for charging the GAL fees or the Petitioner's fees and costs against the Petitioner.

We also conclude that the evidence in the record preponderates against the trial court's finding that Petitioner sought the conservatorship because he "would ultimately benefit from having his father in said conservatorship." Petitioner possessed two powers of attorney, which enabled him to attend to his father's financial and medical needs without a conservatorship. Moreover, he held both powers for over five years, and there is no evidence of malfeasance and no evidence that anyone sought to have the powers revoked. Rather, Petitioner testified that he filed the Petition to prevent Respondent from wasting his assets on excess spending, for example paying $16,000 in veterinary bills, attempting to buy a car (even though Respondent agreed that he should no longer drive), and withdrawing excessive funds from the bank, citing as an example his recent withdrawal of $30,000—none of which Petitioner could prevent as his attorney-in-fact.

For these reasons, we conclude that the evidence preponderates against the above findings and that the trial court erred by relying on these factors in reaching its decision to charge the costs of the proceedings to the Petitioner.

## C. Respondent's Need for a Conservatorship

The evidence also preponderates against the court's findings that Respondent's need for a conservatorship was "borderline" and "not clear cut." Moreover, these findings conflict with the findings the trial court relied upon in granting the Petition.

"The purpose of a conservatorship is to protect the person and the property of the disabled person." *AmSouth Bank v. Cunningham*, 253 S.W.3d 636, 641 (Tenn. Ct. App. 2006); *accord In re Conservatorship of Clayton*, 914 S.W.2d 84, 90 (Tenn. Ct. App. 1995). The statutory definition of a person with a disability is any adult "determined by the court to be in need of partial or full supervision, protection, and assistance by reason of mental illness, physical illness or injury, developmental disability, or other mental or physical incapacity." Tenn. Code Ann. § 34-1-101(14).

A "conservatorship" is "a proceeding in which a court removes the decision-making powers and duties, in whole or in part, in a least restrictive manner, from a person with a disability who lacks capacity to make decisions in one or more important areas and places responsibility for . . . those decisions in a conservator . . . ." *Id*. § 34-1-101(4)(B). A "conservator" is "a person . . . appointed by the court to exercise the decision-making rights and duties of the person with a disability in one or more areas in which the person lacks capacity as determined and required by the orders of the court . . . ."[14] *Id*. § 34-1-101(4)(A). As we have explained before,

> In every conservatorship proceeding, the trial court is to determine whether the respondent to the conservatorship petition is fully or partially disabled and in need of assistance and, if so, whether a full or partial conservatorship is in the respondent's best interest. Under Tennessee Code Annotated § 34-1-126, the petitioner seeking the conservatorship must prove by clear and convincing evidence that the respondent is a "disabled person." Once the petitioner meets his burden of proving that the respondent is fully or partially disabled and in need of assistance from the court, the trial court is then charged with responsibility for determining whether the appointment is in the respondent's best interest. Recognizing the value society places on individual autonomy and self-determination, the court is statutorily required to choose the least restrictive alternative that will sufficiently protect the respondent.

*In re Lawton*, 384 S.W.3d 754, 761 (Tenn. Ct. App. 2012) (citations omitted).

In its order granting the Petition, the trial court stated:

---

[14] "The court itself is ultimately responsible for the disabled persons who come under its care and protection, and thus conservators act as the court's agent and are under the court's supervision." *In re Conservatorship of Clayton*, 914 S.W.2d at 90 (citations omitted).

Taking into consideration the above, **the Court finds by clear and convincing evidence that pursuant to TCA 34-1-126, [Respondent] is a fully disabled person, who is in need of assistance from the Court**. Petitioner filed with his original petition, a sworn Medical Examination Report by Dr. Stephen White, [Respondent's] physician. At the trial in this matter, Petitioner offered testimony by way of a deposition from Dr. White, which was admitted without objection. In this matter, **the medical testimony by Dr. White is of great significance to the Court when determining the nature, severity and consequences of [Respondent's] mental status. It is also important to note that Dr. White's medical testimony was affirmed by lay witnesses who testified regarding the behaviors and omissions of [Respondent]**.

.    .    .

The Court acknowledges that Petitioner has both a valid Durable General Power of Attorney as well as a Durable Power of Attorney for Healthcare. However, **based on [Respondent's] behaviors wherein he contacted movers to leave Uffleman Estates, emptying a bank account and the consideration of purchasing a car, the Court cannot risk allowing [Respondent] the opportunity to revoke said powers of attorney, thereby placing his safety in jeopardy as well as engaging in the waste or dissipation of his property**.

(Emphasis added). Based on these and other findings, the court granted the Petition, created the conservatorship for Respondent's assistance and protection, and appointed Petitioner as the conservator. The order continued with an extensive listing of the rights and powers removed from Respondent and conveyed to Petitioner as conservator.[15]

Thus, the court granted the Petition based on the express findings that Petitioner had proven "by clear and convincing evidence that . . . [Respondent] is a fully disabled person, who is in need of assistance from the Court" and that it was "in [Respondent's] best interest that the Petitioner be appointed as conservator." Significantly, no one has challenged these findings or the decisions to grant the Petition, to create the conservatorship, or to appoint Petitioner as the conservator.

---

[15] Additionally, after noting that Respondent would continue to reside in the assisted living facility and that Respondent's marital home on Liam Court was now owned by Petitioner, the court ruled that Respondent would no longer be responsible for any expenses associated with that property. The court also ruled that Respondent would be awarded a monthly allowance of $500, that shall be placed in a new bank account containing a debit card provided to him, or in cash, whichever Respondent chooses.

However, in the Order for Payment of Fees and the Supplemental Fee Order, the trial court made findings that contradict the above. For example, in the Supplemental Fee Order, the trial court stated, "While [Respondent] was ultimately placed under a conservatorship, it was not a decision that was easily made or clear cut," and, "This court recognizes Petitioner's concern for his father, however, though granted, [Respondent's] need for a conservatorship at this time was borderline."

These findings are irreconcilable with the granting of the Petition because they contradict the earlier finding that the need for a conservatorship was proven "by clear and convincing evidence," which is a heightened standard of proof that "eliminates any 'serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *In re Markus E.*, 671 S.W.3d 437, 456–57 (Tenn. 2023) (quoting *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). And as further explained, "clear and convincing evidence must produce a firm belief or conviction in the fact finder's mind about the truth of the facts to be established." *Id*. (citations omitted). The trial court's finding that Respondent's need was "borderline" directly contradicts its earlier findings "by clear and convincing evidence that . . . [Respondent] is a fully disabled person, **who is in need of assistance from the Court**"; that it was "**in [Respondent's] best interest that the Petitioner be appointed as conservator**"; and that "allowing [Respondent] the opportunity to revoke said powers of attorney" would place "his safety in jeopardy" and risk "the waste or dissipation of his property." (Emphasis added).

The evidence preponderates against the findings that Respondent's need for a conservatorship was "not clear cut" and "borderline." Moreover, the trial court granted the Petition based on the express findings that Petitioner had proven "by clear and convincing evidence that . . . [Respondent] is a fully disabled person, who is in need of assistance from the Court" and that it was "in [Respondent's] best interest that the Petitioner be appointed as conservator," and these findings are not challenged in this appeal.

We are mindful that the decision to charge costs of a conservatorship proceeding rests in the trial court's discretion. *See* Tenn. Code Ann. § 34-1-114(a). However, discretionary decisions are not immune from meaningful appellate review. *See Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). As stated, an abuse of discretion occurs where the trial court has, *inter alia*, applied an incorrect legal standard, reached an illogical decision, or based its decision on a clearly erroneous assessment of the evidence. *See Black v. Strada*, 721 S.W.3d 223, 226 (Tenn. 2025); *see also Lee Med., Inc. v. Beecher*, 312 S.W.3d at 524. Based on the foregoing, we conclude that the trial court's decision to charge the costs of these proceedings against the Petitioner was based on an erroneous assessment of the evidence and a failure to apply the relevant legal principles.

For these reasons, we vacate the trial court's assessment of $9,352.50 against Petitioner for his attorney's fees.

## II. COSTS NECESSARY FOR INITIATING PROCEEDINGS

Petitioner also contends that the trial court erred by charging $1,675 of Petitioner's counsel's fees to Petitioner under subsection (c) of § 34-1-114, which provides:

> Notwithstanding subsections (a) and (b), the petitioner is responsible for the court costs necessary for initiating proceedings, including filing fees and costs associated with required notices and publication. At any point in the proceedings, in the court's discretion, such costs may be charged according to subsection (a) and the petitioner may be reimbursed.

Tenn. Code Ann. § 34-1-114(c).

In its Supplemental Fee Order, the trial court found that the fee affidavit submitted by Petitioner's counsel included "**two powers of attorney totaling $1675.00 which [were] billed as occurring after the Petition for Conservatorship had been filed**." The court reasoned that these fees should be taxed to Petitioner because they were "associated with and necessary for initiating the proceedings in this matter."

As before, we conclude that the trial court based its decision on an erroneous assessment of the evidence and a misapplication of the relevant legal principles. *See Black v. Strada*, 721 S.W.3d 223, 226 (Tenn. 2025). Contrary to the trial court's finding, the fee affidavit submitted by Petitioner's attorney includes no charges for preparing powers of attorney. The only reference to "powers of attorney" is under the heading DISBURSEMENTS, which reads "SIMPLIFILE– power of attorneys x2," with total charges of $88 incurred on December 2, 2024. The amount referenced by the court, $1,675.00, was the sum for "**[t]otal** disbursements for this matter." That amount included itemized expenses for court reporter fees, Dr. White's medical report and deposition fee, and the chancery court filing fee of $264.50, among other disbursements. Thus, the record does not support the trial court's factual finding that Petitioner was seeking to be reimbursed for "two powers of attorney totaling $1,675.00."

We also find that the trial court's reliance on Tennessee Code Annotated § 34-1-114(c) is misplaced. The Petition was granted, and Petitioner was appointed conservator. Thus, as noted above, the costs of these proceedings may be charged against the property of Respondent.

Therefore, we vacate the assessment of these costs to Petitioner.

## III. APPORTIONMENT OF FEES

Having conducted our own assessment of the evidence, and based on our application of the most relevant legal principles, we find that the GAL's fees and costs, as well as the

reasonable and necessary attorney's fees and costs incurred by Petitioner, should be assessed against the property of Respondent.

As stated, Tennessee Code Annotated § 34-1-114 gives courts discretion to charge costs to (1) the property of the respondent; (2) the petitioner; (3) "any other person"; or (4) some combination of the above. *Id.* § 34-1-114. Because there is no "other person" to charge costs to, we conclude that the costs must be assessed against the property of Respondent. This result is consistent with § 34-1-114's preference for charging costs against the property of the respondent when the petition is granted and the petitioner is appointed conservator. As Tennessee Code Annotated § 34-1-114(a) provides:

> In exercising its discretion to charge some or all of the costs against the respondent's property, **the fact a conservator is appointed** or would have been appointed but for an event beyond the petitioner's control **is to be given special consideration**.

*Id.* (emphasis added).

When awarding fees under § 34-1-114, trial courts "must properly consider evidence concerning the reasonableness of the fee requests and whether the fees were incurred in relation to the conservatorship and in benefit of the conservatee or the conservatee's property." *In re Conservatorship of Hudson*, 578 S.W.3d 896, 910 (Tenn. Ct. App. 2018) (citations omitted). Here, the trial court applied the factors in Tennessee Supreme Court Rule 8, Rule of Procedural Conduct 1.5, and found the GAL's fees were "appropriate," and neither party has challenged that decision on appeal. But in the Supplemental Fee Order, the trial court specifically stated that it was making "no findings as to the reasonableness of what was charged to the Petitioner." Thus, we must remand this matter for the trial court to determine the reasonable and necessary attorney's fees and costs incurred by Petitioner and to charge them against the property of Respondent, along with the GAL's fees.[16]

## IV. ATTORNEY'S FEES AND COSTS INCURRED ON APPEAL

As a final matter, Respondent has asked us to assess the AAL's fees and costs incurred in defending this appeal against Petitioner. Respondent has not, however, identified any authority for doing so.

---

[16] In doing so the trial court should be mindful Tennessee Code Annotated § 34-1-114(a) which states that the charging of costs of conservatorship proceedings, which include the guardian ad litem fee, the required medical examination costs, and the attorney's fee for the petitioner, may be charged against the property of the respondent "to the extent the respondent's property exceeds the supplemental security income eligibility limit."

Tennessee Code Annotated § 34-1-125 authorizes the appointment of an attorney ad litem in conservatorship proceedings and states that "the cost of the attorney ad litem must be charged against the assets of the respondent." Tenn. Code Ann. § 34-1-125(a), (b)(1). That said, "[t]he costs of an attorney ad litem may, in the court's discretion, be charged against the petitioner if the court dismisses a conservatorship petition because of a finding of fraud, bad faith, or deception by the petitioner." *Id*. § 34-1-125(b)(2).

Here, there was no finding of fraud, bad faith, or deception by Petitioner. Thus, neither this court nor the trial court has authority to assess the AAL's appellate fees and costs against Petitioner. Rather, as mandated by § 34-1-125(b)(1), we conclude that the AAL's appellate fees and costs must be charged against the property of Respondent. Accordingly, on remand, the trial court shall determine the reasonable and necessary fees and expenses incurred by the AAL in this appeal and assess those charges against the property of Respondent.

## CONCLUSION

The judgment of the trial court is vacated, in part, and modified in part, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the property of the Respondent, Leon Aubrey Manners.

_____

FRANK G. CLEMENT JR., C.J.